JOSEPH LAWSON

*v.*

SIDNEY HUNT.

*Filed at Springfield October 30, 1894.*

SPECIFIC PERFORMANCE—*of contract to reconvey title taken by sheriff's deed.* One who buys a sheriff's certificate of purchase and receives a deed thereon under an agreement with the owner of the land to reconvey, will be compelled, in equity, to specifically perform his contract upon being repaid his advance.

APPEAL from the Circuit Court of Vermilion county; the Hon. FRANCIS M. WRIGHT, Judge, presiding.

Mr. W. J. CALHOUN, for the appellant :

Where a conveyance is in form absolute, in order to change its character to that of a mortgage the proof must clearly and satisfactorily show that such was the contract and intent of the parties. *Strong* v. *Strong*, 126 Ill. 308; *Darst* v. *Murphy*, 119 id. 343.

Messrs. LAWRENCE & LAWRENCE, for the appellee.

Mr. JUSTICE BAKER delivered the opinion of the court :

The parties to this litigation are brother and sister. Their father died intestate on the 27th day of January, 1885, seized of certain lands in Vermilion county, on which he resided at the time of his death, having used and cultivated the same as a farm. He left surviving him a widow and several children. There was a mortgage upon the farm unsatisfied when he died. The widow was appointed administratrix of the estate, and during the time she was administering upon the personal estate she applied enough of the rents and profits of the farm to liquidate said mortgage indebtedness. In December, 1885, Sidney Hunt, appellee, and a younger sister, executed their joint promissory note, with a power of attorney to confess judgment thereon, to a firm named Lyon & Healy, for $330, due

June 1, 1886. Before the maturity of the note the sister died, and about the time it fell due, the State Bank of Danville, then being the holder of the same, caused a judgment by confession to be entered thereon, against appellee, in the county court of said county, for the sum of $359.20. On the 17th day of August, 1886, the sheriff of said county, on an execution issued on said judgment, sold all the interest of appellee in her father's estate to said bank for the amount of the judgment, interest and cost, ($389.55,) and delivered to it his certificate of purchase accordingly. In August, 1887, a few days before the twelve months' redemption expired, appellant obtained from said bank an assignment of that certificate, by paying it $420, the amount which would have been then required to redeem from the sale, and on the 7th day of January following, took a sheriff's deed to said lands. Meanwhile, at the April term, 1887, of the circuit court of said Vermilion county, in a partition proceeding for that purpose, 32.75 acres of said land of which the father died seized were set off to appellee in fee, in severalty. To the October term, 1890, of the same circuit court, this bill was filed, which, as amended, set up the foregoing facts, and then proceeds :

"Complainant further alleges, that she had no knowledge that said judgment had been rendered against her, and that said levy and sale had been made, until about ten days before the time allowed her by law for redemption from said sale, and, being without means with which to redeem, she at once applied to her mother, brothers and sisters for aid to do so, because she says that, aside from the natural love and affection she believed they bore her, her said mother and brother Joseph had received, and then held, all of the rents and profits from her share of said lands since the death of her father, in January, 1885 ; and further, she was entitled to contribution from the estate of said sister Frankie for one-half of said debt and judgment, which estate had descended to her said

mother and brothers and sisters, and was sufficient to pay said contribution; and her said mother, brothers and sisters, well knowing the premises, and in consideration thereof, and the further consideration that complainant should allow her said brother Joseph and mother to continue to use and occupy her share and part of said lands until the profits thereof fully reimbursed them for all money advanced in redeeming from said sale, and which equitably should be repaid by complainant, it was then and there agreed that said mother should furnish the money therefor, and that on a day then fixed the said Joseph and her mother should meet complainant at said State Bank, before the expiration of the time of said redemption, and take up and discharge said certificate of sale, and complainant, relying upon said promises and agreement of her mother and brother Joseph, made no further effort to arrange for said redemption, although she avers that she then could easily have obtained a sufficient loan upon said land to have released said certificate; and that upon the day fixed when she should meet them at said bank, she went there, where she was informed by said bank that they had visited it some two days before, and, upon the statement and representation made by them that they desired said certificate to protect the title and interest of this complainant, induced the said bank to assign the same to the said Joseph Lawson; and complainant avers that the said statement of the said bank is true, in fact; and the complainant avers that the day fixed, as aforesaid, to make said redemption by her mother and brother was about the last day in which she could make redemption, and, still relying upon the good faith and promises of her mother and brother, she made no effort to obtain money from other sources to redeem from said sale; and complainant further shows that her said brother, Joseph Lawson, disregarding his said promises and agreement, and intending to deceive complainant and deprive her of her said land, has occu-

pied, used and enjoyed the same since January, 1885; that he has received the rents and profits thereof, amounting to more than sufficient to reimburse him and his said mother for the amount advanced by them for complainant to take up said certificate of sale."

It is then alleged that in violation of said agreement he took said sheriff's deed, etc. The prayer is, that said deed be declared void, and set aside, etc., and complainant declared the owner of said premises. The original bill contains the further prayer, "that an account be taken of the value of the use of said land by defendant, and the amount of money received by him, and if the same shall not be sufficient to satisfy the amount necessary to redeem the said land from the said sale, that complainant be permitted to redeem upon payment of balance." Appellant answered, denying all the allegations of the bill upon which the prayer for relief was predicated.

The cause was heard in the said circuit court on the pleadings and evidence, the complainant's evidence having been previously taken before the master in chancery, and the defendant's witnesses being examined in open court. The final decree, after reciting the finding of certain facts, orders complainant to pay the defendant $159, with legal interest from that date, within sixty days, and thereupon the defendant to make and deliver to her a quit-claim deed to said land, and if he failed to do so, then the master in chancery of said court to make and deliver the same, the defendant to have the present crops, and the complainant to pay all costs. From that decree this appeal is prosecuted, the sole ground of reversal urged being, that the findings and the decree of the circuit court allowing the complainant to redeem said land are not sustained by the evidence. No objection is made to the manner in which the account was stated between the parties, nor is it denied that, upon the theory of the bill, the allowance to the defendant was fair and just. There is a square denial by the defendant that he obtained said

certificate of the State Bank in pursuance of any under-
standing or agreement, either express or implied, with
the complainant, and he claims that in all his transac-
tions in that purchase he dealt as an entire stranger to
his sister, and without any reference whatever to her in-
terest in said land.

Appellant insists, first, that the testimony introduced
by appellee does not sufficiently support the case made
by her bill; and second, that if it does, it is overcome by
the testimony produced by the defense.

The testimony of appellee herself, given in her own
behalf, is very much confused, but nevertheless it is clear
therefrom that she knew that her land had been sold, and
knew when the time for its redemption would expire, and,
a short time prior to the expiration of such time, visited
her mother and family with a view to make some arrange-
ment to redeem from the sale, and it is also clear from
her testimony that her mother and appellant, and other
members of the family, also knew, at that time, of the
sale of the land, and that the right of redemption would
end in a few days.   In her deposition she states, among
other things, as follows : "I wanted to mortgage my land
to pay it, and they said I could not do it,—couldn't get a
mortgage on it ; and Betty wanted to mortgage her land,
and they said no, too.   They said they would pay it off
as soon as they could make the money out of the rent.
Then I would get the land back, and a deed to it in my
name.   By 'they' I mean mother and Joe and Will.
*   *   *   Then they did not want Betty to mortgage her
land.   They said, 'If you come down here and get into
such work as that, the land will be taken away from you,'
but if they could get the land they would take it and hold
it, and keep it until they could get their money out of the
rent, and when they got their money out of the rent they
would make me a deed to it.   *   *   *   They said they
would meet here the day this was due at the bank. · I was
staying out north of town.   We were to meet here that

day, and they would settle it satisfactorily to me and pay this off. The day it was due I came in here and they had been in here. Mr. Lesure notified me that morning that they had been in here a day or two before and settled this up. * * * I think it was the 17th day of August that Joe and mother and me were to meet here. I don't know who was to pay the money over. Of course, Joe usually pays everything off out there, and takes everything. Of course, I knew they would furnish it, but I didn't know which one would get it." And she also states in her deposition that on a subsequent occasion when she was talking to her mother about the land and Joe was out at the gate untying the horses, he hollowed and said : "Tell her not to cry. I don't want her land in my name. I wouldn't need it. When we get the money out of it she can have it back."

The substance of the testimony of Betty Lawson, a sister of the parties litigant, is, that appellee came out to her mother's house to see about getting money to redeem the land ; that she, Betty, told appellee that she would mortgage her own land for it ; that the family did not want her to mortgage her land, and said she would lose it if she did, and that they would go and take it in, and as soon as they could get the money out of it they would let her have it back ; that she heard Joe say, in the presence of appellee, that they would pay the money, and then she could have the land as soon as they could get their money out of it ; that it was decided that her mother and Joe and Will should meet appellee at the bank and pay the money, and that appellee was satisfied with that arrangement, and that her mother went with Joe on the day he went to Danville to pay for the land.

Elsie Lawson, another sister of the parties to the suit, testifies : "All in the world I ever heard him (appellant) say, was, that when he got his money out of this land,— and he didn't say it to her, he said it to mother,—he would give it back to her ; when he got his rent out of it,

and the interest on his money that he had expended on it, he would give it back to her." And she also testifies ,that she heard her mother tell Sidney (the appellee) the same thing two or three times.

In our opinion, this testimony, taken in connection with the other evidence produced by appellee, substantially and sufficiently sustains the bill of complaint.

It is claimed by appellant that the burden of proof is upon appellee, and that she must establish her case by a preponderance of the testimony. This claim is well made. It is further urged that the testimony of appellant, his mother and two brothers emphatically contradicts the testimony of appellee and her two sisters, and that the weight of the evidence is therefore in favor of appellant. Both appellant and the mother deny, in the most positive language, that there was, at any time, any such conversation or conversations as detailed by appellee and the witnesses in her behalf. In fact, if their testimony is to be believed, the subject of the sale or redemption of the land was never mentioned by appellee to either of them or in their presence. The testimony of two younger brothers tends rather to corroborate the mother and appellant; but their evidence is of a negative character, being to the effect that they did not hear conversations which appellee says occurred in their presence.

After a close examination of all of the evidence found in the record, we are strongly inclined to the belief that there were conversations in the family, and in the presence of both the mother and appellant, as testified to by appellee and her sisters. Appellant admits that the land was worth three times the amount he paid for it. It had been sold, not for the individual debt of appellee, but for the joint debt of herself and a deceased sister. It was the entire interest of appellee in the estate of her deceased father. She seems to have been without other means or property, having worked out most of the time since the death of her father. She was at her mother's

house on the farm. The period allowed for redemption was about to expire. This fact was known, not only to appellee, but to appellant, to the mother, and to one of the sisters, and probably to the whole family. Under such circumstances it would be most natural that the subject should be one of family solicitude and conversation, and that it should not be would be most unnatural, and not at all in accord with our common experiences of life.

Prosper Lesure, vice-president of the bank, testifies that when appellant paid the amount called for by the certificate of sale and obtained that instrument, he simply said, "I want to pay or redeem this land, and pay for it." It would seem that appellant would most likely have used some such word as "buy" or "purchase," instead of the words "redeem" and "pay," if, as his claim is, he, in the transaction, dealt as an entire stranger to his sister, and without any reference whatever to her interest in the land.

Upon the hearing of the cause, as we have already stated, appellant and his witnesses were examined in open court before the chancellor. Appellant and his mother denied, in the most positive terms, all the material facts that had been testified to by appellee and her witnesses. The chancellor, seeing these two witnesses upon the stand and hearing them testify, had much better opportunity than we have for judging of their credibility, and it is manifest from the findings and the decree of the court that the chancellor did not believe that said witnesses swore the truth.

In our opinion the decree of the circuit court was just, equitable and right, and it is affirmed.

*Decree affirmed.*